**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEMOCRACY DEFENDERS FUND, <br><br> 600 Pennsylvania Avenue, SE, No. 15180 <br> Washington, DC 20003 <br><br>     *Plaintiff*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF <br> HOMELAND SECURITY, <br><br> 2707 Martin Luther King Jr. Ave SE, <br> Washington, D.C. 20032 <br><br>     *Defendant.* | CIVIL ACTION NO. 26-1073 <br><br> **COMPLAINT** |

### PRELIMINARY STATEMENT

1. Plaintiff Democracy Defenders Fund ("Plaintiff" or "DDF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel the United States Department of Homeland Security ("DHS") to disclose documents requested pursuant to FOIA. Specifically, Plaintiff is seeking documents related to DHS, Immigration and Customs Enforcement ("ICE"), and Customs and Border Protection ("CBP") employees' contacts with high-level immigration enforcement officials in the Administration, former DHS and immigration officials, and immigration detention contractors.

2. These documents contain vital information that the American public needs in order to assess whether former government officials are using their previous positions and contacts to secure

1

an unfair advantage over other companies and whether current administration officials are fairly and impartially selecting contractors.

3.  To date, Defendant has failed to make any determination on Plaintiff's FOIA request or to disclose any of the requested documents within the deadline stipulated under FOIA, 5 U.S.C. § 552(a)(6)(A)(i).

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this action under 5 U.S.C. § 552(a)(4)(B). This Court also has federal question jurisdiction over this action under 28 U.S.C. § 1331.

5.  This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

6.  This Court is a proper venue under 5 U.S.C. § 552(a)(4)(B) (providing for venue in FOIA cases where the plaintiff resides, or in the District of Columbia).

7.  This Court has the authority to award reasonable costs and attorneys' fees under 5 U.S.C. § 552(a)(4)(E).

## PARTIES

8.  Plaintiff, Democracy Defenders Fund, is a national non-profit section 501(c)(3) organization dedicated to restoring American democracy by defending the rule of law, fighting corruption, and protecting elections. DDF is incorporated under the laws of Washington, DC. DDF also regularly publishes reports, updates, and news related to its mission.

9.  Defendant, DHS, is an agency of the United States under 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, DC.

10. Per 6 U.S.C. § 252 and 6 U.S.C. § 211, respectively, ICE and CBP are components of DHS.

2

11. Defendant is charged with a duty to provide public access to records in its possession consistent with the requirements of the FOIA. Defendant's refusal to provide Plaintiff with the records requested is a violation of FOIA.

## STATEMENT OF FACTS

### *DDF's FOIA Request*

12. On February 3, 2026, DDF submitted its FOIA request to DHS, ICE, and CBP ("FOIA Request"). DDF requested information about communications and meetings between current DHS, ICE, and Administration personnel and Thomas Homan and a list of outside federal contractors. Specifically, DDF requested:

   a. Correspondence: Any communications, including any email, Teams chat, or instant messages, sent or received by the custodians in List A to or from the persons in List B. The date range for the search should be from August 1, 2024, through the date the search is conducted.

   i. List A: Custodians

   1. DHS Special Government Employee Corey Lewandowski

   2. White House detailee Jacalynne "Jacki" Becker Klopp

   3. DHS Senior Advisor Mark Hall

   4. ICE ERO Acting Assistant Director of Custody Management Monica Burke

   5. ICE ERO Acting Assistant Director of Operations Support Ralph Ferguson

   6. ICE ERO Acting Executive Associate Director Marcos Charles

   7. CBP Special Agent Gregory K. Bovino.

   ii. List B: Correspondents

1. Thomas "Tom" Douglas Homan, Border Czar

2. Brian DeMore

3. Tim Robbins

4. David Marin

5. Daniel Bible

6. Henry Lucero

7. Bart VerHulst

8. Timothy "Tim" Aitken

9. Hope Hicks

b. Meetings: All calendar entries for the officials named in List A, above, including any scheduled phone calls, appointments, meetings, or events also attended by a person in List B.

   i. The search should be conducted of their official Outlook calendars, and those of any of their immediate staff with responsibility for managing their official correspondence or calendars. If any named custodian uses paper calendars, secondary "unofficial" calendars, or another non-Outlook system for organizing their schedules, we also request a search of those records.

c. Events: All approvals from the Designated Agency Ethics Official, ethics official, or agency designee or Travel Office for travel to or attendance at any meetings, conferences, or Widely Attended Gatherings (WAGs).

d. Agency Visits: Any entry on the agency's official visitor log reflecting the entry of any person named on List B to any DHS facility.

13. DDF requested that the "Custodian" searches include the government officials' primary accounts and mobile devices, as well as any other email addresses, accounts, or devices that they use for official business.

14. DDF also requested that the "Custodians" search include any personal staff reporting to these government officials with responsibility for managing, sending, or receiving official correspondence on their behalf.

15. Additionally, in regard to the list of "Correspondents," DDF directed the agency to include in its search any names and commonly known nicknames, aliases, or abbreviations, as well as their organizational or corporate affiliations.

### *Background Regarding the "Correspondents" Included in the Request*

16. DDF's request included this specific list of "Correspondents" because all of them have been identified as having ties to the Department or Administration that raise the prospect of undue influence.

17. The companies the Correspondents lead have received millions of dollars of contracts from DHS in recent years, many of which were sole source contracts. This, again, raises understandable suspicion of undue influence, especially in light of several recent corruption scandals.

18. Mr. Homan is currently the Trump Administration's "Border Czar," a senior White House position for which he receives a salary of nearly $200,000.[1]

---

[1] Executive Office of the President, *Annual Report to Congress on White House Office Personnel* (July 1, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/07/2025-Annual-Report-to-Congress-on-White-House-Staff.pdf.

19. On September 20, 2025, MS NOW reported that Homan accepted $50,000 from undercover FBI Agents posing as prospective government contractors.[2] These payments were purportedly for the purpose of securing future contracts with the government if President Trump won re-election.

20. Despite reportedly strong evidence, the investigation against Tom Homan was dropped without explanation after the Trump Administration assumed control of the Department of Justice.[3]

21. Brian DeMore is CEO of Universal Strategic Advisors, LLC ("USA").[4]

22. Tim Robbins is Principal of USA. Prior to that position he was the Deputy Assistant Director at the U.S. Department of Homeland Security.[5]

23. David Marin is the Chief Talent Officer of USA. He was previously an ICE Deputy Field Office Director.[6]

24. Both DeMore and Marin were defendants in a lawsuit alleging that they engaged in malicious prosecution and ordered ICE agents to manufacture evidence against an ICE official as retaliation for her complaints against a hostile work environment.[7]

---

[2] Carol Leonnig & Ken Dilanian, *Tom Homan was investigated for accepting $50,000 from undercover FBI agents. Trump's DOJ shut it down*, MS NOW (Sept. 20, 2025), https://www.ms.now/news/tom-homan-cash-contracts-trump-doj-investigation-rcna232568.

[3] *Id.*

[4] Sam Biddle, *No-Bid ICE Contract Went to Former ICE Agents Sued for Fabricating Criminal Evidence on the Job*, THE INTERCEPT (Apr. 17, 2025), https://theintercept.com/2025/04/17/ice-deportation-contracts-us-advisors/.

[5] Timothy Robbins, LINKEDIN, https://www.linkedin.com/in/timothy-robbins-07a925190 (last visited Mar. 25, 2026).

[6] Biddle, *supra* note 4.

[7] *Myles v. United States*, No. 20-55910, 2022 WL 4011172 (9th Cir. Sept. 2, 2022).

25. Marin was removed from office when the Department of Justice complained that he had engaged in misconduct that made it so that he could not be called as a witness.[8] The misconduct involved misuse of government vehicles, waving his firearm for "unofficial purposes," and lack of candor.[9]

26. USA had never had a contract with DHS until 2025, when they were awarded a sole source contract for $73 million to "manage field office alien check-ins, monitor immigration case statuses (and the outcome), assist with coordinating removals, update contact information to ensure that the alien can be located, respond to telephone calls, triage complaints and grievances, manage outreach mailboxes, enter data into ICE's system of record, manage alien files, capture biometrics, organize and collect immigration related documents, field questions related to the immigration process, coordinate with ICE to assign aliens to an appropriate monitoring program, and notify ICE if someone is not complying with the terms of a conditional release or when someone is a risk to community safety."[10]

27. Daniel Bible is a former executive associate director for ICE's Enforcement and Operations division.[11] Days before the 2024 presidential election, Bible left ICE to take a senior-level position with the GEO Group.[12]

---

[8] Susan McGuire Smith, *DHS Investigator Loses Job After U.S. Attorney's Complaint*, FEDSMITH.COM (Apr. 4, 2025), https://www.fedsmith.com/2025/04/04/dhs-investigator-loses-job-after-us-attorneys-complaint/.

[9] *Marin v. Dep't of Homeland Sec.,* No. 2024-1767, 2025 WL 429790 (Fed. Cir. Feb. 7, 2025).

[10] Biddle, *supra* note 4.

[11] Daniel Bible, LINKEDIN, https://www.linkedin.com/in/daniel-bible-682608230/ (last visited Mar. 25, 2026).

[12] Nick Schwellenbach & René Kladzyk, *Private Prison Giant Hired ICE Detention Chief,* PROJECT ON GOVERNMENT OVERSIGHT (Jan. 17, 2025), https://www.pogo.org/investigates/private-prison-giant-hired-ice-detention-chief.

28. GEO Group is one of the largest private detention companies. In recent months, GEO Group has been awarded over a billion dollars in contracts with ICE to maintain detention facilities and assist with immigration enforcement throughout the United States.[13]

29. Bart VerHulst is the Vice President of Partnership Relations at Corrections Corporation of America (CoreCivic).[14] He is also a longtime acquaintance of USA's Principle, Tim Robbins.[15]

30. According to legal filings in a later lawsuit between the two companies, "Because of Robbins' experience, connections, and influence at ICE, Verhulst decided to seek Robbins' help in expanding CoreCivic's relationships with ICE and other federal agencies."[16] CoreCivic hired USA to "identify, shape, penetrate and win business" within ICE and other agencies.[17] That relationship later broke down when USA allegedly used CoreCivic's proprietary information to land its own contract with ICE.[18]

---

[13] Press Release, *The GEO Group Awarded 15-Year Contract by U.S. Immigration and Customs Enforcement for Company-Owned, 1,000-Bed Delaney Hall Facility in New Jersey*, GEO Group (Feb. 27, 2025), https://investors.geogroup.com/news-releases/news-release-details/geo-group-awarded-15-year-contract-us-immigration-and-customs; Press Release, *The GEO Group Awarded Contract by U.S. Immigration and Customs Enforcement for Provision of Skip Tracing Services*, GEO Group (Dec. 22, 2025), https://investors.geogroup.com/news-releases/news-release-details/geo-group-awarded-contract-us-immigration-and-customs-1.

[14] Anita Wadhwani, *Stockard on the Stump: CoreCivic Battles Former Consultant over ICE Business*, NEWS FROM THE STATES (May 30, 2025), https://www.newsfromthestates.com/article/stockard-stump-corecivic-battles-former-consultant-over-ice-business.

[15] *Id.*

[16] *CoreCivic of Tenn., LLC v. Universal Strategic Advisors, LLC*, No. 3:25-cv-00514, Mem. Op. at 2 (M.D. Tenn. Feb. 27, 2026), https://law.justia.com/cases/federal/district-courts/tennessee/tnmdce/3:2025cv00514/104409/33/.

[17] *Id.*

[18] *Id.* at 4.

8

31. The Trump Administration has granted millions of dollars of other sole source contracts to CoreCivic to manage private correctional facilities.[19]

32. Tim Aitken is the President of Aitken Group, LLC. Prior to that he was a Field Office Director for ICE.[20]

33. The Aitken Group, LLC, is "a consulting firm" headed by Aitken that offers "to assist companies of all sizes in securing contracts with Federal, State, and local law enforcement agencies."[21]

34. Hope Hicks is a former White House Communications Director and was an Executive Vice President and Chief Communications Officer for Fox Corporation.[22]

35. Sole source contracts bypass typical governmental bidding processes designed to ensure fair competition between companies seeking government contracts.[23] Sole source contracts are only supposed to be available in certain very narrow circumstances, like when no other competing products exist or there is an emergency.[24]

---

[19] Heather Hollingsworth & John Hanna, *ICE is using no-bid contracts, boosting big firms, to get more detention beds*, AP NEWS (Jun. 16, 2025), https://apnews.com/article/immigration-detention-centers-ice-deportations-trump-e92b67a388f041b84593d7a29fd9c54; Adam Friedman, *Private prison operator CoreCivic saw 55% increase in immigration detainee contracts*, TENNESSEE LOOKOUT (Nov. 6, 2025), https://tennesseelookout.com/2025/11/06/private-prison-operator-corecivic-saw-55-increase-in-immigration-detainee-contracts/.

[20] Timothy Aitken, LINKEDIN, https://www.linkedin.com/in/timothy-aitken-85135123?original_referer=https%3A%2F%2Fwww.google.com%2F (last visited Mar. 25, 2026).

[21] *Id.*

[22] Anna Kaufman, *Ex-Trump staffer Hope Hicks to Join Megyn Kelly's media company as COO*, USA TODAY (Jan. 29, 2025), https://www.usatoday.com/story/entertainment/tv/2025/07/29/megyn-kelly-hope-hicks-podcast-company/85419750007/.

[23] 41 U.S.C. § 3301 (2021).

[24] 41 U.S.C. § 3304 (2021).

9

36. To enable DHS to award these sole source contracts, the Trump Administration declared an "emergency" at the border.[25]

37. A recent report in ProPublica indicated that DHS also used the "emergency" at the border to justify funneling $220 million in sole source contracts to a firm with ties to former DHS Secretary Kristi Noem, her DHS advisor Corey Lewandowski, and DHS spokesperson Tricia McLaughlin.[26]

38. Because of the importance of informing the public about millions – or even billions – of taxpayer dollars being spent on potentially corrupt government contracts, and the importance of knowing whether the current or former government officials are engaged in acts of corruption, DDF requested a fee waiver.

39. Additionally, because DDF is "primarily engaged in disseminating information" and (2) this is a "[a] matter of widespread and exceptional media interest involving questions about the Government's integrity which affect public confidence," 6 C.F.R. § 5.5(e)(1)(ii), (iv), DDF also requested expedited processing.

40. As DDF explained in its Request:

> The potential that Mr. Homan or others at DHS or in the Administration used their official authority to favor outside contractors, including by providing them with sole source contracts, is the type of potential corruption that the FOIA is aimed at helping uncover. It is necessary that the public be able to access the requested records so that they can make an independent judgment about whether the contracting process was

---

[25] Hollingsworth & Hanna, *supra* note 19.

[26] Justin Elliott, Joshua Kaplan & Alex Mierjeski, *Firm Tied to Kristi Noem Secretly Got Money From $220 Million DHS Ad Contracts*, ProPublica (Nov. 14, 2025), https://www.propublica.org/article/kristi-noem-dhs-ad-campaign-strategy-group.

irrevocably tainted by conflicts of interest. These issues are particularly urgent because DHS has recently been provided $150 billion dollars for additional detention centers and related activities.

### *Defendant's Failure to Respond to DDF's FOIA Request*

41. DDF submitted its FOIA request to DHS on February 3, 2026 via DHS, ICE, and CBP FOIA portals.

42. Via automated reply, the portal assigned the ICE Request tracking number 2721551.

43. Via automated reply, the portal assigned the DHS Request tracking number 2721541.

44. Via automated reply, the portal assigned the CBP Request tracking number 2721561.

45. On February 9, 2026, DHS acknowledged the request via email and assigned it request number 2026-HQFO-01743.

46. In its February 9 correspondence, DHS invoked a 10-day extension of its deadline due to "unusual circumstances," pursuant to 6 C.F.R. Part 5 § 5.5(c) and granted DDF's request for fee waiver.

47. On February 20, 2026, CBP acknowledged the request via email and assigned it request number CBP-FO-2026-056019.

48. In its February 20 correspondence, CBP informed DDF that "CBP FOIA has the capability to conduct a search of CBP personnel records only. Therefore, from List A, CBP will search for 7. CBP Special Agent Gregory K. Bovino to or from individuals in List B only." CBP stated that it would send the other portions of DDF's request to DHS and ICE for processing.

49. CBP invoked a 10-day extension of its deadline due to "unusual circumstances," pursuant to 6 C.F.R. Part 5 § 5.5(c).

50. ICE never sent DDF any acknowledgement and never assigned an ICE tracking number to DDF's Request.

11

51. On March 19, 2026, DDF followed up with all three agencies via email to ask for a status update regarding DDF's Request.

52. All three agencies sent back a non-substantive, automated response.

53. To date, none of the agencies have made a substantive determination regarding DDF's request, nor have they provided any responsive documents.

54. None of the agencies have made a determination regarding DDF's request for expedited processing. Only DHS has made a determination regarding DDF's request for a fee waiver, which the agency granted.

## COUNT ONE:

### *Violation of Statutory Deadline*

55. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

56. FOIA requires federal agencies to respond to public requests for records, including files maintained electronically, to increase public understanding of the workings of government and to provide access to government information. FOIA reflects a "profound national commitment to ensuring an open Government" and agencies must "adopt a presumption in favor of disclosure." Presidential Mem., 74 Fed. Reg. 4683 (Jan. 21, 2009).

57. FOIA requires agencies to determine within 20 working days after the receipt of any FOIA request whether to comply with the request. 5 U.S.C. § 552(a)(6)(A)(i).

58. Agencies may only extend this time period for an additional 10 working days in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B)(i). FOIA also provides that upon request, agencies are to make records "promptly available." 5 U.S.C. § 552(a)(3)(A).

59. Nearly two months have passed since Plaintiff submitted its Request to DHS, ICE, and CBP, yet the agencies have provided no documents in response to that Request.

12

60. Administrative remedies are deemed exhausted when an agency fails to comply with the applicable time limits. 5 U.S.C. § 552(a)(6)(C)(i). Having exhausted its administrative remedies for its Requests, DDF now turns to this Court to enforce the remedies and public access to agency records guaranteed by FOIA.

## COUNT TWO

### *Unlawful Withholding of Agency Records*

61. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

62. Defendant has failed to search for records responsive to Plaintiff's FOIA Request.

63. Defendant's failure to make a determination on or disclose the documents requested within the time frame mandated under FOIA is a denial and wrongful withholding of records in violation of 5 U.S.C. § 552.

64. Defendant's conduct amounts to a denial of Plaintiff's FOIA request. Defendant is frustrating Plaintiff's efforts to adequately understand and educate the public regarding millions of dollars of potentially corrupt contracts.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

i.   Enter an order declaring that Defendant violated the statutory deadline to respond to Plaintiff's FOIA request;

ii.  Enter an order declaring that Defendant wrongfully withheld requested agency documents;

iii. Issue a permanent injunction directing Defendant to disclose to Plaintiff all wrongfully withheld documents;

iv.  Maintain jurisdiction over this action until Defendant are in compliance with the FOIA and every order of this Court;

v.    Award Plaintiff attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

vi.    Grant such additional and further relief to which Plaintiff may be entitled.

Respectfully submitted on March 30, 2026.

/s/ *Ginger P. McCall*_____
Ginger McCall
DC Bar # 1001104
ginger@freeinformationgroup.com

Kevin H. Bell
DC Bar # 90015600
kevin@freeinformationgroup.com

FREE INFORMATION GROUP, PLLC
1100 13th St. NW, Ste. 800
Washington, DC 20005
(202) 946-3642


*/s/ Taryn Wilgus Null*
Taryn Wilgus Null (DC Bar # 985724)
Norman L. Eisen (DC Bar #435051)
Zsa'Queria Martin (pro hac vice application forthcoming)

DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, No. 15180
Washington, DC 20003
(202) 594-9958

Norman@democracydefenders.org
Taryn@democracydefenders.org
Zsaqueria@democracydefenders.org

*Attorneys for Plaintiff*

14